✎JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

DEFENDANTS

**(b)** County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| | | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☐ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (**Do not cite jurisdictional statutes unless diversity**):

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions): JUDGE _____ DOCKET NUMBER _____

DATE _____ SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.    (a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.    Jurisdiction**. The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III.    Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.    Nature of Suit**. Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.    Origin**. Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

**VI.    Cause of Action**. Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity**.          Example:          U.S. Civil Statute: 47 USC 553
                                                                                     Brief Description: Unauthorized reception of cable service

**VII.    Requested in Complaint**. Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.    Related Cases**. This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature**. Date and sign the civil cover sheet.

JENNIFER M. BRENNAN (9621)
**LITCHFIELD CAVO, LLP**
420 East South Temple, Suite 510
Salt Lake City, Utah 84111
Phone: 801-359-0091
Facsimile: 801-384-0554
jbrennan@litchfieldvaco.com

ATTORNEYS FOR PLAINTIFF ADMIRAL INSURANCE COMPANY

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ADMIRAL INSURANCE COMPANY,<br><br>  Plaintiff,<br><br>v.<br><br>OMEGA DEMOLITION, CORP.,<br><br>  Defendant. | **ADMIRAL INSURANCE COMPANY'S COMPLAINT FOR DECLARATORY JUDGMENT**<br><br>Case No. 2:15-cv-00413 |

NOW COMES Plaintiff Admiral Insurance Company, by its attorneys, Litchfield Cavo LLP, and pursuant to 28 U.S.C. §2201(a) seeks a declaratory judgment and other relief against Defendant Omega Demolition Corp. In support thereof, Admiral states as follows:

### NATURE OF THE ACTION

1. This action is brought as a claim for declaratory judgment, pursuant to 28 U.S.C. §2201(a) seeking a determination regarding (1) the obligations of Admiral Insurance Company ("Admiral"), if any, to Omega Demolition Corp. (hereinafter "Omega") under an insurance policy issued to Advanced Explosives Demolition Inc. (hereinafter "AED"). The dispute between the parties concerns Omega's request for insurance coverage with respect to certain

alleged liabilities arising out of an underlying lawsuit filed by claimant James McWorthey.

## PARTIES

2.  Admiral Insurance Company ("Admiral") is a corporation organized under laws of the state of Delaware, with its principal place of business in New Jersey.

3.  Defendant Omega is an Illinois corporation who had entered into a contract with Admiral's named insured AED, an Idaho corporation located in Tensed, Idaho.

## JURISDICTION AND VENUE

4.  This Court has subject matter jurisdiction over this dispute under 28 U.S.C. § 1332 in that it arises between citizens of different states and, based on the cause and nature of the injuries alleged, the compensatory damages demanded in the underlying lawsuit, and the demand by Omega for payment or reimbursement of costs incurred in defending against the underlying lawsuit, the amount in controversy exceeds the sum or value of $75,000.00 exclusive of interest and costs.

5.  Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this declaratory judgment lawsuit occurred in this District.

## THE UNDERLYING CLAIM

6.  On August 15, 2013, James McWorthey ("McWorthey") filed a lawsuit in the Circuit Court of the City of St. Louis, Missouri against his employer, Omega (the "Underlying Lawsuit"). *See* Exhibit A, a copy of the August 15, 2013 Petition. On March 4, 2014, McWorthey filed a First Amended Petition against Omega. *See* Exhibit B, a copy of the March 4, 2014 Amended Petition (collectively the "Petition").

7. The Petition alleges that Omega is liable to its employee, McWorthey, for damages under the Merchant Marine Act of 1920, which is more commonly known as the "Jones Act" and codified at 46 U.S.C. §30104, *et seq.* (the "Jones Act").

8. The Petition alleges that on July 24, 2013 McWorthey was employed by Omega on the Milton-Madison Bridge Demolition project, which was being conducted by Omega.

9. The Petition alleges that McWorthey worked off a barge which was a vessel in navigation and was subject to the perils of the sea.

10. The Petition alleges that Omega was a corporation which assumed all liabilities of the Plaintiff's employment and was in the business of demolishing and removing the Milton-Madison Bridge over and in the Ohio River. The Petition further alleges that Omega operated towboats, work boats, safety boats and barges upon the Ohio River.

11. The Petition goes on to allege that while in the performance of his duties, McWorthey suffered catastrophic injuries while guiding a tow boat and a machine that was operating off a barge.

12. McWorthey alleges in the Petition that Omega was negligent in failing to: provide McWorthey a safe place to work; implement proper procedures; provide McWorthey with adequate tools and equipment to perform his assigned duties; inspect the demolished bridge after demolition; and properly supervise the project. McWorthey also alleges that Omega's vessels and appurtenances were, at the time of his accident, "unseaworthy and not reasonably fit for their intended purposes". Additionally, McWorthey alleges that Omega "failed to meet its duty under General Maritime Law to provide its employee, the Plaintiff, with full and adequate maintenance and cure for said injuries."

## THE AED-OMEGA SUB-CONTRACT

13. On or about May 10, 2013, Omega negotiated and entered into a subcontract with AED, an Idaho corporation, wherein AED agreed to provide explosive demolition services to Omega with respect to the Madison-Milton Bridge demolition project (the AED-Omega Subcontract). On information and belief, a true and correct copy of the subcontract is attached as Exhibit C.

14. The AED-Omega Subcontract contains an indemnification provision which recites as follows:

> 1.25 Subcontractor shall assume the entire liability for any and all personal injury and/or property loss claims suffered by its own employees and/or by other persons allegedly injured on the project or claiming in any manner to have incurred any personal injury and/or property loss as a result of or concerning the project or scope of work which is the subject of this agreement. Subcontractor waives any limitation-of-liability defense based upon any workers' compensation laws or any interpretation of them and Subcontractor shall fully and completely indemnify, defend and hold harmless Omega and its employees, agents and assigns (collectively, "Indemnities") from and against any and all losses as a result of such claims, and subcontractor shall incorporate the terms and conditions of this waiver into all of its sub-subcontracts.

(See Exhibit C.)

## THE ADMIRAL POLICY

15. Admiral issued Policy No. CA000017445-01 to Advanced Explosives Demolition, Inc., located in Tensed, Idaho, for the policy period of February 22, 2013 to February 22, 2014 (the "Admiral Policy"). *See* Exhibit D, the Admiral Policy.

16. The Admiral Policy provides commercial general liability coverage ("CGL Coverage") with limits of liability of $1,000,000 per occurrence subject to a $2,000,000 general aggregate. (*See* Exhibit D.)

17. The terms of the CGL Coverage provide under Coverage A that Admiral will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" that occurs during the policy period and is caused by an "occurrence." The insuring

4

agreement for Coverage A also provides that Admiral has the right and duty to defend any "suit" seeking covered damages. It further provides that no duty to defend will be owed, however, in relation to any "suit" seeking damages to which the coverage does not apply. (See Exhibit D.)

18. Section V of the Admiral Policy contains certain definitions, including the following definitions, quoted in pertinent part as follows:

> 3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.
>
> \* \* \*
>
> 13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

(See Exhibit D.)

19. Through Endorsement CG 24 26 07 04 to the Admiral Policy, the term "insured contract" is defined, in relevant part, as follows:

> 9. "Insured contract" means:
>
>> f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or by those acting on your behalf. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

(See Exhibit D.)

20. The "Additional Insured – Owners, Lessees or Contractors – Scheduled Person or Organization" endorsement, Form CG 20 10 07 04 of the Admiral Policy provides as follows:

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

5

SCHEDULE

Name of Additional Insured Person(s) or Organization(s):

Any person or organization that is … a contractor on whose behalf you are performing ongoing operations, but only if coverage as an additional insured is required by a written contract or written agreement that is an "insured contract" and provided that the "bodily injury," … first occurs subsequent to execution of the contract or agreement.

* * *

Section II—Who Is An Insured is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury," … caused, in whole or in part, by:

1. Your acts or omissions; or

2. The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

(See Exhibit D.)

21. The Admiral Policy contains and "Absolute Employers Liability" Exclusion, Endorsement AD 68 86 05 11 which provides as follows:

Commercial General Liability Coverage Form Section I Coverage A Exclusion e. is deleted in its entirety and replaced by the following:

e. Employer's Liability

"Bodily injury" to:

(1) Any "employee" of any insured arising out of and in the course of:

(a) Employment by any insured; or

(b) Performing duties related to the conduct of any insured's business; or

(2) The spouse, child, parent, brother, sister or registered domestic partner of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies:

(1) Whether any insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

It is further agreed that Definition 9. ["insured contract"] Paragraph f. is amended to include the following subparagraph (4):

(4) Under which any insured assumes liability for "bodily injury" to an "employee" of any insured arising out of and in the course of employment by any insured or performing duties related to the conduct of any insured's business; or to the spouse, child, parent, brother, sister, or registered domestic partner of that "employee".

We shall have no duty to investigate, defend or indemnify any insured against any loss, claim, "suit," demand, fine or other proceeding alleging injury or damages of any kind, to include but not limited to "bodily injury," "property damage", or "personal and advertising injury" to which this endorsement applies.

(See Exhibit D.)

22. The Admiral Policy contains, at Section I, Subsection 2.d., the following "Workers' Compensation and Similar Laws" exclusion, which states in pertinent part as follows:

This insurance does not apply to:

**d. Workers Compensation and Similar Laws**
Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

(See Exhibit D.)

23. The Admiral Policy contains, at Section I, Subsection 2.g., the following "Aircraft, Auto or Watercraft" exclusion, which states in pertinent part as follows:

This insurance does not apply to:

**g. Aircraft, Auto or Watercraft**

> "Bodily injury" . . . arising out of the ownership, maintenance, use or entrustment to others of any . . . watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".
>
> This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" . . . involved the ownership, maintenance, use or entrustment to others of any . . . watercraft that is owned or operated by or rented or loaned to any insured.
>
> This exclusion does not apply to:
>
> (1)      A watercraft while ashore on premises you own or rent;
>
> (2)      A watercraft you do not own that is:
>
>        (a)      Less than 26 feet long; and
>
>        (b)      Not being used to carry persons or property for a charge;
>
>                                      \*   \*   \*
>
> (4)      Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; . . .

(*See* Exhibit D.)

24.      Admiral's coverage obligations, if any, are also predicated upon an insured's performance of its obligations under the Admiral Policy. In particular, the insured is required to provide timely notice of occurrences, claims and suits. (*See* Exhibit D, Section IV, Condition 2.a.)

25.      The Admiral Policy requires an insured to provide notice of an "occurrence" as soon as practicable. (See Exhibit D, Section IV, Condition 2.b). In the case of a claim or "suit", an insured must immediately send to Admiral copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit." (*See* Exhibit D, Section IV, Condition 2.c)

26. In addition, the Admiral Policy states that no insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without Admiral's consent. (See Exhibit D, Section IV, Condition 2.d.)

27. The Admiral Policy also provides the following "Other Insurance" provisions, which in pertinent part state:

> 4. Other Insurance
>
> If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:
>
>> a. Primary Insurance
>>
>> This insurance is primary except when Paragraph b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph c. below.
>>
>> b. Excess Insurance
>>
>> (1) This insurance is excess over:
>>
>>> (a) Any of the other insurance, whether primary, excess, contingent or on any other basis: . . .
>>>
>>> (iv) If the loss arises out of the maintenance or use of . . . watercraft to the extent not subject to Exclusion g. of Section I-Coverage A-Bodily Injury And Property Damage Liability.

(See Exhibit D, Section IV, Condition 4).

## The Coverage Disputes

28. Omega has demanded insurance coverage from Admiral in connection with its potential liability arising from the injuries alleged by Mr. McWorthey in the Underlying Lawsuit.

29. Omega claims that it is entitled to coverage as an additional insured under the Admiral Policy which Admiral issued to its named insured, AED, an Idaho corporation.

30. Admiral disputes that Omega is entitled to coverage under the Admiral Policy in connection with the injuries alleged by Mr. McWorthey and/or the damages sought in the Underlying Lawsuit.

31. A genuine dispute exists between Admiral and Omega regarding whether coverage is owed under the Admiral Policy in relation to the injuries alleged by Mr. McWorthey and/or the damages sought in the Underlying Lawsuit and if so, the extent of such coverage.

## **COUNT I**

32. Admiral incorporates Paragraphs 1 through 31 above as and for Paragraph 32 of Count I.

33. The "Additional Insured – Owners, Lessees or Contractors – Scheduled Person or Organization" endorsement to the Admiral Policy (Form CG 20 10 07 04) provides in its Schedule that the following persons or organizations are additional insured persons or organizations:

> Any person or organization that is … a contractor on whose behalf you are performing ongoing operations, but only if coverage as an additional insured is required by a written contract or written agreement that is an "insured contract"....

34. The AED-Omega Subcontract does not meet the definition of an "insured contract" as defined by the Admiral Policy.

35. Because there is no "written contract or written agreement that is an 'insured contract'" between AED and Omega, Omega is not an "Additional Insured" on the Admiral Policy.

36. Alternatively, even if Omega were to qualify as an Additional Insured upon the Admiral Policy, there is no coverage for Omega for the Underlying Lawsuit for one or more of the following reasons.

37. The "Additional Insured-Designated Person or Organization" endorsement of the Admiral Policy provides that, for those qualifying as an additional insured person or organization, coverage is limited to "bodily injury", "property damage" or "personal and advertising injury" that is "caused in whole or in part, by" AED's "acts or omissions" or "the acts or omissions of those acting on [AED's] behalf."

38. The Underlying Lawsuit against Omega does not seek recovery from Omega for "bodily injury" caused by AED's acts or omissions, or the acts or omissions of those acting on AED's behalf.  Rather, the allegations in the Underlying Lawsuit against Omega consist solely of claims of negligence against Omega due to Omega's alleged failure to provide McWorthey a safe place to work; implement proper procedures; provide McWorthey with adequate tools and equipment to perform his assigned duties; inspect the demolished bridge after demolition; and properly supervise the project.

39. As such, there is no coverage for Omega pursuant to the terms of the "Additional Insured-Designated Person or Organization" endorsement.

40. Further, the Admiral Policy contains an Absolute Employers Liability Exclusion which bars coverage for bodily injury to any employee of any insured, arising out of and in the course of: a) employment by any insured; or b) performing duties related to the conduct of any insured's business.

41. The Underlying Lawsuit specifically alleges that Mr. McWorthey was an employee of Omega, and that he was injured during the course of his work for Omega.

42. As such, the Absolute Employers Exclusion applies to bar coverage for Omega under the Admiral Policy for the Underlying Lawsuit.

43. Also, the Admiral Policy contains a Workers Compensation and Similar Laws exclusion which bars coverage for any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

44. Mr. McWorthey filed his suit against Omega pursuant to the Jones Act. The Jones Act is a federal statute that provides a negligence remedy against a seaman's employer for the injury or death of a seaman. McWorthey's suit alleges that he is a seaman, and that Omega is his employer.

45. As such, the Workers Compensation and Similar Laws Exclusion applies to bar coverage for Omega under the Admiral Policy for the Underlying Lawsuit.

46. Additionally, the Admiral Policy contains an Aircraft, Auto or Watercraft Exclusion, which among other things bars coverage for injury arising out of "the ownership, maintenance, use, or entrustment to others of any . . . watercraft owned or operated by or rented or loaned to any insured."

47. The Underlying Lawsuit alleges that "while in the performance of his duties, [Mr. McWorthey] suffered catastrophic injuries while guiding a tow boat and a machine that was operating off of a barge." It is further alleged that Omega "operated towboats, work boats, safety boats and barges" and that "at all times herein mentioned, all vessels and boats were in the possession and/or control of" Omega. Additionally, the Underlying Lawsuit alleges that Omega's "vessels and appurtenances were at that time, unseaworthy and not reasonably fit for there (sic) intended purposes", and that his "injuries were a direct and proximate result thereof."

48. As such, the Aircraft, Auto or Watercraft Exclusion applies to bar coverage for Omega under the Admiral Policy for the Underlying Lawsuit.

49. Finally, Condition 2 of the Admiral Policy requires notification to Admiral of an "occurrence" as soon as practicable.

50. On information and belief, Omega knew about the underlying incident and/or "occurrence" on or about the date it happened on July 24, 2013.

51. Despite its knowledge of the "occurrence", however, Omega did notify Admiral of the "occurrence" until February 26, 2015, which is approximately nineteen months after the incident.

52. Omega's notice of an occurrence to Admiral did not constitute notice to Admiral "as soon as practicable".

53. As such, Omega did not comply with Condition 2 of the Admiral Policy with respect to timely notice of occurrences.

54. Due to this breach of Condition 2, coverage for Omega under the Admiral Policy for the Underlying Lawsuit is barred.

55. Condition 2 of the Admiral Policy also requires that the insured immediately send to Admiral copies of any demands, notices, summonses or legal papers received in connection with any claim or suit.

56. Omega was named as a defendant in the Underlying Lawsuit on August 15, 2013.

57. Omega, however, did not send Admiral copies of any of the demands, notices, summonses or legal papers it received in connection with the Underlying Lawsuit until February 26, 2015, more than 18 months after Omega was sued in the Underlying Lawsuit.

58. This does not comply with the requirement in Condition 2 of the Admiral Policy that the insured immediately send Admiral copies of the demands, notices, summonses or legal papers it receives in connection with a suit.

59. As such, Omega did not comply with Condition 2 of the Admiral Policy with respect to the immediate forwarding of demands, notices, summonses or legal papers it received in connection with the Underlying Lawsuit.

60. Due to this breach of Condition 2, coverage for Omega under the Admiral Policy for the Underlying Lawsuit is barred.

61. Therefore, Omega is not entitled to coverage as an additional insured under the Admiral Policy for one or more of the following reasons:

    a. There is no coverage for Omega under the Admiral Policy because Omega does not qualify as an Additional Insured under the Admiral Policy;

    b. There is no coverage for Omega under the Admiral Policy because the AED-Omega Subcontract does not qualify as an "insured contract" as defined by the Admiral Policy;

    c. There is no coverage for Omega under the Admiral Policy because Omega's liability was not caused, in whole or in part, by AED's acts or omissions, or the acts or omissions of those acting in AED's behalf, in the performance of AED's' ongoing operations for Omega; and/or

    d. There is no coverage for Omega under the Admiral Policy because the Admiral Policy's Absolute Employers Liability exclusion applies to bar coverage for Omega;

    e. There is no coverage for Omega under the Admiral Policy because the Admiral Policy's Workers Compensation and Similar Laws exclusion applies to bar coverage for Omega;

    f. There is no coverage for Omega under the Admiral Policy because the Admiral Policy's Aircraft, Auto or Watercraft exclusion applies to bar coverage for Omega; and/or

    g. There is no coverage for Omega under the Admiral Policy because Omega breached one or more of the provisions of Condition 2 of the Admiral Policy;

62. In the alternative, should it be found that Omega qualifies as an Additional Insured under the Admiral Policy, and that coverage is not barred for one or more of the reasons identified above, any coverage to Omega under the Admiral Policy would be excess of any of Omega's other insurance, whether primary, excess, contingent or any other basis, pursuant to Condition 4.b.(1)(a)(iv) of the Admiral Policy, which would make any coverage by Admiral excess where the loss arises out of the maintenance or use of watercraft.

WHEREFORE, pursuant to 28 U.S.C. §2201(a), Admiral Insurance Company requests that this Court enter a judgment and order, declaring the rights and obligations of the parties as follows:

A. Declaring and adjudicating the rights and obligations of the parties with respect to coverage under the Admiral Policy with respect to the Underlying Lawsuit and any other claims or demands arising from or relating to the injuries allegedly sustained by James McWorthey;

B. Declaring that Admiral has no duty or obligation under the Admiral Policy to defend or indemnify Omega Demolition Corp. with respect to the Underlying Lawsuit or for any other claims or demands arising from or relating to the injuries allegedly sustained by James McWorthey;

C. For such other declaratory relief as the Court deems appropriate.

Dated: September  10th , 2015

**LITCHFIELD CAVO, LLP**


By:    s/Jennifer M. Brennan
       Attorneys for Plaintiff Admiral
       Insurance Company